THE VILLAGE OF GRANT V. ISAAC W. SHERRILL.

FILED FEBRUARY 17, 1904. No. 13,399.

Municipal Corporations: POWERS. Section 69, chapter 12 of the laws of 1887, does not authorize or contemplate the issue of negotiable bonds by cities and villages to aid private parties in the construction of a system of waterworks for such city or village.

ERROR to the district court for Perkins county: CHARLES L. GUTTERSON, JUDGE. *Reversed and dismissed.*

*B. F. Hastings*, for plaintiff in error.

*Hall & Marlay* and *W. P. Hall*, contra.

DUFFIE, C.

March 6, 1889, an ordinance was adopted by the village authorities of the village of Grant calling a special election to be held on the 30th of March, 1889, for the purpose of voting on a proposition to issue bonds to the amount of $4,000, with interest coupons attached, for the purpose of aiding in the construction of a system of waterworks in said village. The election was called, and the proposition received a majority vote of the electors. May 18, 1889, the bonds were duly executed, and were registered in the office of the auditor of state on the 22d day of May, and were duly certified by G. L. Laws, secretary of state, and T. H. Benton, auditor of public accounts. This suit was brought by the defendant in error to recover upon 16 interest coupons, of $30 each, attached to said bonds.

It is conceded that defendant in error purchased the bonds before maturity, paying value therefor, without knowledge or notice of any defense thereto, except such as the law itself may impose. The district court gave judgment for the defendant in error, and the village has brought the record to this court for review. We do not deem it necessary to discuss any question raised as to the regularity of the proceedings surrounding the issue of the bonds. The rule has become of almost universal application that a *bona fide* purchaser may rely upon recitals, such as the bonds in this instance contain, against any defense of irregularity in their issue. But the question of power to issue a bond is one always open as a defense to its collection and, as we think the question of power in the village to issue the bonds in question will dispose of this case, we will confine ourselves to that particular question. The power claimed on the part of the village is found in subdivision 15, section 69, chapter 12 of the laws of 1887, and is as follows:

"To establish, alter and change the channels of water courses, and to wall them and cover them over, to establish, make and regulate wells, cisterns, windmills, aque-

ducts, and reservoirs of water and to provide for filling the same. Second: To make contracts with and authorize any person, company, or corporation to erect and maintain a system of waterworks and water supply, and to give such contractors the exclusive privilege for a term not exceeding 25 years to lay down in the streets and alleys of said city water mains and supply pipes, and to furnish water to such city or village and the residents thereof, and under such regulations as to price, supply and rent of water meters, as the council or board of trustees may from time to time prescribe by ordinance for the protection of the city, village, or people. The right to supervise and control such corporation, as above provided, shall not be waived or set aside. Third: To provide for the purchase of steam engines, and for a supply of water for the purpose of fire protection and public use, and for the use of the inhabitants of such cities and villages, by the purchase, erection, or construction of a system of waterworks, and by maintaining the same; *Provided,* That all contracts for the erection or construction of any such work, or any part thereof, shall be let to the lowest responsible bidder therefor, upon not less than 20 days' public notice of the terms and conditions upon which the contract is to be let having been given by publication in a newspaper published in said city or village, and if no newspaper is published therein, then in some newspaper published in the county; *Provided, further,* That no member of the city council or board of trustees, nor the mayor, shall be directly or indirectly interested in such contract, and in all cases the council or board of trustees, as the case may be, shall have the right to reject any and all bids that may not be satisfactory to them. Such cities or villages may borrow money or issue bonds for the purpose, and levy and collect a general tax in the same manner as other municipal taxes may be levied and collected, for the purchase of steam engines and for the purchase, erection or construction, and maintenance of such waterworks, or to pay for water furnished such city or village under contract, to an amount

not exceeding 7 mills on the dollar in any one year on all the property within such city or village as shown and valued upon the assessment rolls of the assessor of the proper precinct or township, in addition to the sum authorized to be levied under subdivision one of this section, and all taxes raised under this clause shall be retained in a fund known as 'water fund.' "

The authorities all agree that legislative authority is necessary to authorize counties, townships and school districts to borrow money and issue negotiable bonds, or to issue negotiable bonds in aid of any public enterprise. Such bodies exist for purposes of local and police regulation and, having the power to levy taxes to defray all public charges created, they have no implied power to make commercial paper of any kind, unless it is clearly implied from some express power which can not be fairly exercised without it. *Jury v. Britton,* 15 Wall. (U. S.) 566. It has been said that it is one thing to have the power to incur a debt and to give proper vouchers therefor, and a totally different thing to have the power of issuing obligations unimpeachable in the hands of third persons. *Claiborne County v. Brooks,* 111 U. S. 400. Thus the power to build a courthouse does not include the power to issue municipal bonds in payment therefor. *Hill v. Memphis,* 134 U. S. 198. In *Brinkworth v. Grable,* 45 Neb. 647, it was said:

"It is settled law that a municipal corporation has no power to issue its bonds in aid of a work of internal improvement unless expressly authorized by statute to do so."

The question then is, does the statute above quoted authorize cities and villages to issue negotiable bonds to aid private parties in the construction of a system of waterworks for the municipality making the donation? The law, while clumsily drawn, is clear, we think, in providing two methods by which the municipality may secure the benefit of a water supply. First: "To make contracts with and authorize any person, company or corporation to

erect and maintain a system of waterworks and water
supply, and to give such contractors the exclusive priv-
ilege for a term not exceeding 25 years to lay down in the
streets and alleys of said city water mains and supply
pipes, and to furnish water to such city or village and
the residents thereof, and under such regulations as to
price, supply and rent of water meters, as the council
or board of trustees may from time to time prescribe by
ordinance for the protection of the city, village or people."
Second: "By providing for the purchase of steam engines,
and for a supply of water for the purpose of fire protec-
tion and public use, and for the use of the inhabitants of
such cities and villages, by the purchase, erection or con-
struction of a system of waterworks, and by maintaining
the same." We have quoted the language of the statute
relating to the two methods which the municipality may
adopt. If the second method is adopted, the contract must
be let to the lowest responsible bidder. Public notice must
be given, and no member of the city council or board of
trustees, nor the mayor, shall be directly or indirectly
interested in the contract, and the municipality may bor-
row money or issue bonds for the purpose. If the first
plan is pursued, then the municipality is authorized to
levy and collect a general tax for the purchase of steam
engines, or to pay for water furnished to an amount not
exceeding 7 mills on the dollar in addition to the sum au-
thorized to be levied for other purposes. Or, if a system
of waterworks already constructed is purchased by the
municipality, then bonds may be issued in payment there-
for. Nowhere in the law do we find express or implied
authority, authorizing a donation to be made to private
parties, who may seek a franchise from the city for the
use of the streets and alleys in which to lay mains, and
to furnish water to the municipality and its citizens; and,
even if such authority were found in the statute, we doubt
very much the power of the legislature to authorize a do-
nation for such a purpose. Under our constitution, dona-
tions can be made by municipal authorities only to aid in

works of internal improvement, and a system of water-works designed to supply municipalities and their citizens with water facilities is not, we think, an internal improvement within the meaning of that instrument. The bonds in question contain the following recital: "This bond is one of a series of eight bonds of $500 each issued for the purpose of aiding in the construction of a system of water-works for the use of said village under and by authority of chapter 14, Compiled Statutes of Nebraska, 1887, entitled 'Cities of the Second Class and Villages,' section 69." The bonds therefore bear upon their face ample evidence of their own invaldity, and no one can claim to be a *bona fide* purchaser of a bond which carries on its face indubitable evidence of its unlawful character.

We recommend a reversal of the judgment of the district court and a dismissal of the action.

FAWCETT, ALBERT and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause dismissed.

REVERSED.